ASA H. WATERS et al. *vs.* JAMES M. QUIMBY et al.

Where the officers of a company, organized under the act entitled, "An act to authorize the establishment, and to prescribe the duties of companies for manufacturing and other purposes" (*Nix Dig.* 456) make a certificate, as required by the 19th section of the act, that the capital stock of the company is paid into the treasury in cash, when in fact it is paid in property of an uncertain value, such certificate is untrue, and the officers making it are liable for the debts of the company under the provisions of the 30th section of the act.

---

This cause came before the court on a motion for a new trial. The action was commenced in this court, and was tried at the Essex circuit, at April Term, 1857. The jury rendered a verdict for the plaintiffs for $3250.83. On the return of the *postea*, the defendants moved to set aside the verdict and for a new trial.

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices HAINES and VREDENBURGH.

*Bradley* and *F. T. Frelinghuysen*, for the defendants.

*Hubbell* and *W. Pennington*, for the plaintiffs.

The opinion of the court was delivered by

The CHIEF JUSTICE. This action is brought to recover the amount of two bills of exchange, dated the 17th day of February, 1854, drawn by Amos K. Carter upon the Perry Patent Arm Company, and by them accepted. The individual liability of the defendants is sought to be established under the provisions of the 30th section of the act entitled, "An act to authorize the establishment and to prescribe the duties of companies for manufacturing and other purposes," approved March 2d, 1849. *Nix. Dig.* 460. By that section it is enacted as follows: "If any certificate made, or any public notice given by the officers of any company, in pursuance of the provisions of this act, shall be false in any material representation, all the officers who shall have signed the same shall be jointly and severally liable for all the debts of the company contracted while they were stockholders or officers thereof."

The declaration sets out the organization of said company under the provisions of the statute, the contracting of the debt by the company to the plaintiffs, the recovery of judgment therefor against the corporation, and avers that the defendants, being the president, directors, secretary, and treasurer of said company, made a certificate, as prescribed by the 19th section of said act, and did sign and swear to the same, and did record and publish the same, as required by said act, whereby the defendants did certify that the amount of capital stock of the said corporation was $288,000, and that the whole amount of said capital had been paid into the treasury of the said company *in cash.* The declaration further avers, that the said capital stock of $288,000 was not paid into the treasury of the said company in cash, as in the said certificate, and publication thereof, is made known, and as required by the act under which the said company was incorporated; by means whereof the defendants, as stockholders and officers of the said company, became liable to pay to

the plaintiffs the debt so due and owing to them by the said company.

A verdict having been rendered for the plaintiffs, the defendants ask for a new trial, on the ground—first, that the court erred in refusing to non-suit; and second, that the verdict is against law and evidence. The only question in the cause is, whether the certificate made by the officers of the company was or was not false in the material representation charged in the declaration, viz., that the capital stock of $288,000 was paid into the treasury of the company *in cash.*

Is a sale and transfer, by an individual, of property to a corporation, and his acceptance of stock in payment for such property, a payment of capital *in cash,* within the meaning of the statute? It may, perhaps, be maintained that the acceptance by the corporation, from a third party, of property necessary for its operations at a fair value, in exchange for stock, is a payment in cash, within the meaning of the statute; and that the payment to the corporation of the price of the stock, and the repayment of the money in purchase of the property, will not vary the essential character of the transaction. Conceding that the law will admit of that latitude of construction, is not this transaction of a totally different character? Twelve individuals own certain patent rights, machinery, tools, and fixtures, and are carrying on the business of manufacturing fire-arms. They determine to become a corporation under the provisions of the statute. Having organized as a corporation, they agree, as individuals, to transfer the entire property to the body corporate at a price designated, and, as corporators, they agree to receive it at that price. There is in reality no change of ownership. The same individuals who were owners before are owners still, and to the same relative extent. They fix a hypothetical value upon their property, and call it cash. There was no contract, no bargain and sale between distinct parties having distinct and different interests. The entire property

cost the associates something like $36,000. They agree to transfer it to the corporation at a valuation of $252,000, the patent rights alone being valued at $243,000, and the entire machinery, tools, and fixtures at $9000, the corporation assuming all the debts of the association. The property, valued at $243, had no market value. It is not pretended that it had ever been bought or sold for any such price. It consisted of patents, the value of which had not been ascertained. It was purely a speculative value, depending upon a thousand contingencies. The speculation proved a perfect failure. Within two years the company was in the hands of receivers, and the creditors of the company were left remediless, except as against the individual corporators, under the provisions of the statute. Can such a transaction be deemed a bargain and sale of property to the corporation? Can the transfer of a patent right, which has never realized to its owners one dollar, to a corporation by the corporators themselves, be a payment of $243,000 *cash capital* by the stockholders, simply because they choose to estimate it at that value? If such a valuation and transfer of property can be deemed a payment of cash capital, the statute is a dead letter.

If the mere transfer of the property by the corporators to the association, in pursuance of an arrangement among themselves, did not constitute a payment of capital in cash, it is clear that the ceremony of paying the money and the entries upon the treasurer's books did not alter the essential character of the transaction. On the 29th September, 1853, the stockholders, by their trustee, offer to sell the property, and the directors agree to purchase at a price stipulated. On the same day the treasurer charges himself with $252,000, as the amount paid by the several stockholders as their proportion of the capital stock, and on the same day credits himself with the same amount, paid to the finance committee to pay the stockholders for their interest in the property transferred. A part of the money thus paid, it is proved, was obtained

from the bank by one of the stockholders, having been negotiated by the treasurer of the corporation. It was used to pay the shares of several of the stockholders, and for this purpose went into the treasurer's hands several times. When it had accomplished the object for which it was procured, it was returned again to the bank by the individual who procured it. It is apparent that this whole transaction was in pursuance of the previous arrangement, by which the property of the associates was to be taken at their own valuation for so much capital stock ; that the money paid in was not in truth the property of the person paying it, and that it was never owned and held by the corporation as a part of the capital stock.

Under these circumstances it was very properly left by the court to the jury to say whether the whole transaction was not colorable, and resorted to for the mere purpose of a formal compliance with the requirements of the statute. The jury having found that such was the fact, I see no reason to disturb the verdict on the ground of its being either against law or evidence.

There was no error in the court declining to charge the jury that the fact that all the witnesses called on the part of the plaintiffs testifying that they considered the patent worth $243,000, was conclusive evidence of the good faith of the sale of the patent to the company, or that there was no evidence of fraud in the payment of the capital of the company into the treasury. Whether there was fraud or not in the transaction, was a question peculiarly for the jury upon all the evidence in the case, and the mere evidence of the witnesses, as to their estimate of the value of the stock at the time of the transfer, could not be decisive upon that point. The utmost it could show would be that there was no actual fraud meditated in making the transfer, but it could not prove that it was not a mere evasion of the statute.

Nor did the court err in suggesting, as a test of the belief of the company that the property purchased was fairly

worth the price paid, the answer to the inquiry, whether if the property had been in the hands of strangers, they would have bought it at that price. If the jury believed that the company paid to its own stockholders for the property a higher price than they would have been willing to pay to others, it was certainly some evidence that they took the property at a price beyond its real value.

A new trial should be denied.

SEE *same case*, 3 *Dutch.* 296.